UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
JAMES DEAMICHES,                              :        CASE NO. 1:12-CV-1373
                                              :
                    Plaintiff,                :
                                              :
vs.                                           :        OPINION & ORDER
                                              :        [Resolving Doc. No. 1]
OHIO DEPARTMENT OF                            :
REHABILITATION & CORRECTION,                  :
et al.,                                       :
                                              :
                    Defendants.               :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro Se* plaintiff James DeAmiches filed this action under 42 U.S.C. §§ 1983, 1985 and 1986

against defendants Ohio Department of Rehabilitation & Correction ("ODRC"); ODRC Director

Gary Mohr; Former ODRC Director John Doe; John Doe attorneys, paralegals and administrative

records clerks employed by ODRC; the Ohio Adult Parole Authority ("OAPA"); former and current

John Doe members of the OAPA; Marion Correctional Institution ("MCI") Warden Jason Bunting;

Former MCI Warden Margaret Beightler; MCI Deputy Warden Tim Milligan; former and current

John Doe Deputy Wardens of MCI; and "John/Jane Doe current and former Administrative

Officers/ Agents, and/or Employees of MCI responsible for prisoners' records keeping" (hereinafter

referred to collectively as "ODRC/OAPA defendants").  Plaintiff also named Cuyahoga County

Court of Common Pleas Judge Shirley Strickland Saffold as a defendant.

       Plaintiff alleges defendants conspired to obstruct his constitutional rights by falsely

imprisoning him beyond his proper release date.  Plaintiff sues Judge Saffold in her individual

capacity only and sues the remaining defendants in both their individual and official capacities. He

seeks compensatory and punitive damages.

On October 22, 2012, this Court issued an Order notifying plaintiff that his Complaint may

be subject to dismissal for failure to state a claim upon which relief may be granted.  Plaintiff was

ordered to amend his Complaint within 30 days of that Order to set forth a cognizable claim for

relief and was informed that all or part of his action would be dismissed if he failed to file a legally

sufficient complaint within the requisite time period.  *See Apple v. Glenn*, 183 F.3d 477, 479 (6th

Cir. 1999) ("Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee

has been paid unless the court gives the plaintiff the opportunity to amend"); *Benson v. O'Brian,*

179 F.3d 1014 (6th Cir. 1999); *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998); *Tingler v. Marshall*,

716 F.2d 1109, 1112 (6th Cir. 1983); *Habich v. City of Dearborn*, 331 F.3d 524, 534 fn 4 (6th Cir.

2003); *Fields v. Campbell*, 2002 WL 1359388 (6th Cir. June 20, 2002).  Plaintiff failed to file an

Amended Complaint within 30 days of this Court's October 22, 2012 Order.

## I.  Background

In December 1999, plaintiff pled guilty in the Cuyahoga County Court of Common Pleas

to two counts of rape of a child under the age of thirteen, two counts of gross sexual imposition, and

three counts of illegal use of a minor in a nudity-oriented performance.  *See State v. DeAmiches*,

Case No. CR-99-380999 (Cuyahoga Cty Ct. Cmn. Pl).  One of the illegal use of a minor counts

alleged illegal possession or viewing of materials, while the remaining two counts charged plaintiff

with photographing minors.  *Id.*    Defendant Saffold was the Judge assigned to plaintiff's

underlying criminal case.

On January 19, 2000, Judge Saffold sentenced plaintiff to maximum, consecutive sentences

on all the offenses noted above for a total sentence of 46 to 54 years imprisonment.  Specifically, Judge Saffold imposed maximum prison terms of (1) ten years each on the rape convictions; (2) five years each on the gross sexual imposition convictions; (3) twelve months on the conviction for illegal use of a minor based on illegal possession or viewing; (4) eight years on the conviction for illegal use of a minor based on illegal photographing that had occurred after 1996; and (5) an indefinite term of seven to fifteen years on the remaining conviction for illegal use of a minor based on illegal photographing which had occurred prior to 1996.  Judge Saffold ordered each of these sentences to be served consecutively.

Plaintiff appealed, arguing the sentences imposed were excessive and contrary to law.  The state appellate court agreed.  The court first found that, in imposing maximum sentences, Judge Saffold failed to take into consideration the fact that plaintiff was a first offender who had never served a prison term and was, therefore, entitled to an initial presumption that he should receive the shortest prison term authorized for each offense. *State v. DeAmiches*, 2001 WL 210020 (Ohio App. 8 Dist. March 1, 2001).  The court also found the record did not support Judge Saffold's determination that plaintiff committed the "worst forms" of the offenses charged pursuant to Ohio Rev. Code 2929.14.  In addition, the appellate court determined the record did not support Judge Saffold's imposition of consecutive sentences given the lack of evidence that plaintiff presented an "uncommon risk of recidivism." *Id*. at * 10.  Based on its own review of the record, the court found that "[w]hile DeAmiches' conduct is despicable," Judge Saffold's imposition of maximum, consecutive sentences was "excessive." *Id*. at * 11.

The appellate court then modified plaintiff's sentence as follows:

> We sentence DeAmiches to a nine-year prison term for each rape offense, to a four-year prison term for each gross sexual imposition offense, to a six-year term

for the second degree felony illegal use of a minor in nudity-oriented material offense, and to six-month terms for each fifth degree felony illegal use of a minor in nudity-oriented material offense.  <u>We impose an indefinite term of two to ten years on the pre-1996 offense of illegal use of a minor in nudity-oriented material</u>. We order the prison terms served concurrently and give credit for time served.  We do not disturb the remainder of DeAmiches' sentence; he remains adjudicated a sexual predator pursuant to R.C. Chapter 2950 and, because the judge did not advise him of post-release controls as part of his sentence under R.C. 2967.28, such post-release controls are not part of his sentence.

The judge is hereby directed to vacate her prior sentencing order journalized February 2, 2000 and issue a journal entry consistent with this opinion.  The judge is further directed to take all necessary administrative steps to inform the prison system of DeAmiches' modified sentence.

*Id*. at * 11-12 (emphasis added).  The State subsequently appealed; however, the Ohio Supreme Court declined jurisdiction.  *State v. DeAmiches*, 92 Ohio St.3d 1432 (June 27, 2001).

The state trial court docket reflects Judge Saffold failed to vacate her prior sentencing order as commanded by the state appellate court until over three years later on December 13, 2004, after plaintiff filed a "Motion to Comply with Court of appeals journal entry and opinion." *See Docket Sheet for State v. DeAmiches*, Case No. CR-99-380999 (Cuy. Cty. Ct. Cmn. Pl.). *See also State ex rel. DeAmiches v. Saffold*, 2010 WL 3441944 at fn 1 (Ohio App. 8 Dist. Aug. 27, 2010).  Shortly thereafter, and without explanation, Judge Saffold issued a journal entry on March 8, 2005 which stated "[t]he sentence on count eleven (11) is to read 'This count is a pre-senate bill two and defendant is sentenced to seven (7) to fifteen (15) years." *See Docket Sheet for State v. DeAmiches*, Case No. CR-99-380999 (Cuy. Cty. Ct. Cmn. Pl.).  Three years later, on February 20, 2008, Judge Saffold amended the sentencing entry to add mandatory post-release control.  *Id*. *See also State ex rel. DeAmiches v. Saffold*, 2010 WL 3441944 at fn 1 (Ohio App. 8 Dist. Aug. 27, 2010).

Plaintiff alleges he was not aware Judge Saffold had issued the March 2005 and February 2008 sentencing entries until late 2009 when he requested and received a copy of the docket in his

underlying criminal case. (Doc. 1 at 4). Believing that his "rightful release date" was January 15, 2010, plaintiff sent written notice to some or all of the ODRC/OAPA defendants that these sentencing entries were void and demanded that he be released on a timely basis. (Doc. 1 at 4). The ODRC, however, "failed to act to correct the situation despite having had notice, and failed to do so much as respond to the Plaintiff to address his claims and demands." (Doc. 1 at 5).

Plaintiff thereafter filed a *pro se* Motion to Vacate/Void Judgment, which the trial court denied. *See Docket Sheet for State v. DeAmiches*, Case No. CR-99-380999 (Cuy. Cty. Ct. Cmn. Pl.). Plaintiff then commenced a mandamus action in the state appellate court against Judge Saffold. On May 26, 2010, the state appellate court issued an alternative writ of mandamus ordering Judge Saffold to vacate the March 2005 and February 2008 sentencing entries and reinstate the sentence as directed by the appellate court in its previous decision. *See also State ex rel. DeAmiches v. Saffold*, 2010 WL 3441944 (Ohio App. 8 Dist. Aug. 27, 2010). The next day, Judge Saffold issued a journal entry complying with the writ of mandamus. *Id.* Plaintiff was released from prison on June 2, 2010, which he claims is five and a half months past his "rightful release date." (Doc. 1 at 5).

On June 1, 2012, plaintiff filed the instant Complaint under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986. In Count One, plaintiff alleges the ODRC/OAPA defendants violated his rights under the Fourteenth Amendment by "illegally and falsely continuing [his] incarceration and detention past his rightful release date," despite the fact that plaintiff had expressly notified these defendants that Judge Saffold's March 2005 and February 2008 sentencing entries were void. In Count Two, plaintiff alleges the ODRC/OAPA defendants and Judge Saffold violated his equal protection rights because they knew or should have known that his sentence rightfully expired on

January 15, 2010 but nevertheless conspired to legally and falsely extend his incarceration because of his inclusion in the "publically hated class of persons convicted of sex offenses."  In Count Three, plaintiff alleges Judge Saffold violated his due process and equal protection rights by stepping outside the lawful bounds of her jurisdiction to enter the March 2005 and February 2008 sentencing entries and causing him to be wrongfully imprisoned for five and a half months past the actual expiration of his sentence.  He claims that, by doing so, Judge Saffold "stepped outside her official capacity as Judge," acted without jurisdiction, and "abandoned her judicial immunity." (Doc. 1 at  3-4).

Plaintiff seeks compensatory and punitive damages for financial losses, as well as emotional and mental anxiety.

## II. Standard of Review

The Court notes that plaintiff paid the $350.00 filing fee in this case and, therefore, the screening provisions set forth in 28 U.S.C. § 1915(e) do not apply.  *See Benson,* 179 F.3d at 1017. The Sixth Circuit has explained that, "[g]enerally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint."  *Apple*, 183 F.3d at 479.  *See also Tingler,* 716 F.2d at 111-12 (requiring a district court to give unambiguous notice of its own motion to dismiss and to notify parties of a reasonable date by which they must respond).

As set forth *supra*, the Court issued an Order on October 22, 2012 notifying plaintiff that all or part of his Complaint may be subject to dismissal for failure to state a claim upon which relief may be granted. (Doc. 3).  This Order also provided him an opportunity to amend his Complaint to set forth a cognizable claim for relief within 30 days of the date of the Order.  (Doc. 3).  Plaintiff

-6-

failed to submit an Amended Complaint pursuant to this Order.

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As the Supreme Court further explained in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). It is not sufficient to plead "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Indeed, while legal conclusions can provide the framework of a complaint, "they must be supported by factual allegations." *Id.* at 1950.

### III.  Analysis

**A.  Proper Parties**

**1.  ODRC, OAPA and Official Capacity Claims**

In the Complaint, plaintiff states causes of action against the ODRC and the OAPA. The Court finds these defendants are immune from suit for the following reasons.

The Eleventh Amendment[1] bars suits brought in federal court against a State and its

---

[1]      The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST., AMEND. XI. The Supreme Court has interpreted this Amendment as granting states broad sovereign immunity from federal suits filed by their own citizens as well as citizens of other states. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120-21 (1984).

agencies unless the State has waived its sovereign immunity or consented to be sued in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").  There are some exceptions to the immunity recognized by the Eleventh Amendment.  A plaintiff may sue a State for damages in federal court when a State expressly consents to suit, or if the case concerns a federal statute that was passed by Congress pursuant to Section 5 of the Fourteenth Amendment and expresses a clear congressional intent to abrogate sovereign immunity.  *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55 (1996); *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

With respect to the instant case, the State of Ohio has not waived sovereign immunity in federal court. *See Mixon*, 193 F.3d at 397.  In addition, the Supreme Court has held that the federal statute invoked in this case, 42 U.S.C. § 1983, was not intended to abrogate the States' Eleventh Amendment immunity. *See Will*, 491 U.S. at 66-67; *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Because the Eleventh Amendment bars suits for monetary damages against the State and its agencies, plaintiff's claims against ODRC and OAPA are dismissed.

Plaintiff also states claims against the remaining ODRC/OAPA defendants in their official capacities.  The Supreme Court has held that "a suit against a State official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 at 71.  *See also Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).  As these ORDC/OAPA defendants are employed by ODRC, MCI and OAPA, and thus State employees, plaintiff's official capacity claims against these defendants are construed against the State of Ohio and dismissed for the same reasons as set forth above.

Furthermore, the Supreme Court has held that a State, its agencies, and its officials sued in their official capacities for monetary damages are not considered "persons" for purposes of a § 1983 claim.  *See Will*, 491 U.S. at 71.  Consequently, even aside from the issue of sovereign immunity under the Eleventh Amendment, plaintiff fails to state claims for monetary damages against these defendants pursuant to § 1983.

Accordingly, and for all the reasons set forth above, the Court finds plaintiff's claims against  ODRC and OAPA are dismissed.  The Court further finds that plaintiff's official capacity claims against all remaining ODRC/OAPA defendants are also dismissed.[2]

## 2.    Individual Capacity Claims

Plaintiff also sues the ODRC/OAPA defendants in their individual capacities.  With respect to defendants Mohr, Beightler, Bunting and Milligan, plaintiff's individual capacity claims are dismissed.   Plaintiff does not include any specific factual allegations against these defendants in his Complaint, nor does he explain the basis for his claims against these defendants.  A plaintiff cannot establish the liability of any defendant absent a clear showing that he/she was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  The Complaint does not contain any facts which reasonably associate defendants Mohr, Beightler, Bunting and Milligan with the alleged constitutional violations at issue.

To the extent plaintiff is suing these defendants based on a theory of supervisory liability, this claim must fail as well. Liability under § 1983 cannot be imposed based on *respondeat*

_____

[2]    Although a claim for prospective injunctive relief may proceed against a state official sued in his/her official capacity, plaintiff herein does not seek injunctive relief in his Complaint.  *See Hafer v. Melo*, 502 U.S. 21, 28 (1991); *Will*, 491 U.S. at 71, n. 10.

superior. *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3. *See also Grinter*, 532 F.3d at 575. "'At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Grinter*, 532 F.3d at 575 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff has not alleged any facts suggesting that defendants Mohr, Beightler, Bunting or Milligan authorized, approved, or knowingly acquiesced in the alleged constitutional violations that form the basis of the Complaint. Accordingly, plaintiff's individual capacity claims against these defendants are dismissed.

Plaintiff's individual capacity claims against the various John and Jane Doe defendants listed in the Complaint are also dismissed. Plaintiff claims generally that he provided written "legal notice" to unspecified individuals at MCI and/or ODRC indicating Judge Saffold's sentencing entries were void and his "rightful release date" was January 15, 2010. (Doc. 1 at 5). He further claims as follows:

> The Plaintiff, having read a copy of a notice Prison administrative officers from the ODRC legal department instructing them to search criminal judgment in search of void PRC terms so the ODRC could access the Courts to "correct" void judgments to the detriment of prisoners, had cause from which to believe the ODRC would similarly act to prevent illegal and false imprisonment resulting from void judgments. The ODRC, however, failed to act to correct the situation despite having had notice, and failed to do so much as respond to the Plaintiff to address his claims and demands.

(Doc. 1 at 5).

The Court finds plaintiff's claims that these defendants violated his constitutional rights by failing to release him are without merit. There are no allegations in the Complaint suggesting that any John and Jane Doe defendants had personal involvement in or responsibility for Judge Saffold's issuance of the March 2005 and February 2008 sentencing entries at issue. Moreover,

-10-

plaintiff's conclusory allegations that the John/Jane Doe defendants conspired with Judge Saffold to falsely imprison him fail to satisfy the heightened pleading requirements for conspiracy claims. *See Dallas v. Holmes*, 2005 WL 1313801 at * 6 (6th Cir. May 12, 2005) (conspiracy claims under §§ 1983 and 1985 must be pled with specificity); *Frost v. Boyle*, 2008 WL 650323 at * 11 (N.D. Ohio March 5, 2008). Accordingly, plaintiff's individual capacity claims against the John and Jane Doe defendants are dismissed.

In light of the above, the only remaining defendant is Judge Saffold. Plaintiff's claims against this defendant are discussed below.

### B.    Judicial Immunity

Plaintiff alleges Judge Saffold violated his due process and equal protection rights when she issued her March 2005 and February 2008 sentencing entries without notice or hearing, causing him to be imprisoned for five and a half months past the true expiration of his sentence. And she sentenced him to a term the Court of Appeals had specifically told her not to impose. He asserts Judge Saffold lacked jurisdiction to *sua sponte* change his sentence and, therefore, "abandoned her judicial immunity." (Doc. 1 at 3-4).[3]

Even when they act in a lawless and irresponsible fashion, judicial officers are generally absolutely immune from civil suits for monetary damages. *See Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). This far-reaching protection is needed to ensure that the independent and impartial exercise of judgment is not impaired by the exposure of potential damages. *Barnes*, 105

---

[3]    Plaintiff states in the Complaint that he is suing Judge Saffold in her individual capacity only.

F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed in the judge's judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction.  *Mireles*, 502 U.S. at 11-12.  *See also Leech v. DeWeese*, 689 F.3d 538, 542 (6ᵗʰ Cir. 2012).

Plaintiff cannot overcome the presumption of immunity under the first criteria.  The determination of whether an action is performed in the defendant's judicial capacity depends on the "nature" and "function" of the act, not on the act itself.  *Mireles*, 502 U.S. at 13; *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Looking first to the "nature" of the act, the Court must determine whether the conduct giving rise to the claim is a function generally performed by a judge.  *Stump*, 435 U.S. at 362.  This inquiry does not involve a  rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges.  *Mireles*, 502 U.S. at 13.  Second, an examination of the "function" of the act alleged requires the Court to assess whether the plaintiff dealt with the judicial officers in their respective judicial roles.

Applying these principles, the Complaint shows that Judge Saffold acted in her judicial capacity at the time of the conduct alleged in the Complaint.  Presiding over criminal proceedings is a function normally performed by state trial court judges.  Furthermore, plaintiff interacted with Judge Saffold only when she was performing her duties as a judicial officer.  Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

However, judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction.  *Mireles*, 502 U.S. at 11-12; *Barnes,* 105 F.3d at 1116.  When the immunity of the judge is at issue, the scope of the judge's

jurisdiction is to be broadly construed.  *Stump*, 435 U.S. at 356-57.  A judge will not be deprived of immunity because the action he or she took was performed in error, done maliciously, or was in excess of his or her authority.  *Id.*  Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides.  *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985).

In the present case, plaintiff argues Judge Saffold lacked jurisdiction to *sua sponte* modify his sentence, without notice or a hearing, via her March 2005 and February 2008 sentencing entries. As set forth above, the state appellate court ordered Judge Saffold to vacate her February 2, 2000 sentencing entry imposing maximum, consecutive sentences, and ordered Saffold to  impose the sentence outlined in the appellate court's decision.  *State v. DeAmiches*, 2001 WL 210020 at * 11-12 (Ohio App. 8th Dist. March 1, 2001).  After being ordered to vacate her sentence and after being ordered to sentence DeAmiches to specific imprisonment with the counts to run concurrently, Saffold failed for more than three years to vacate her prior sentencing order.  After Saffold refused to comply with the court of appeals' opinion, the plaintiff filed a *pro se* "Motion to Comply with Court of Appeals journal entry and opinion."  *See Docket Sheet for State v. DeAmiches*, Case No. CR-99-380999 (Cuy. Cty. Ct. Cmn. Pl.).   Shortly thereafter, and without explanation, Judge Saffold issued a journal entry on March 8, 2005 which stated "[t]he sentence on count eleven (11) is to read 'This count is a pre-senate bill two and defendant is sentenced to seven (7) to fifteen (15) years." *See Docket Sheet for State v. DeAmiches*, Case No. CR-99-380999 (Cuy. Cty. Ct. Cmn. Pl.).  So after refusing to comply with the court of appeals' order, Saffold then imposed seven to fifteen years even though the Ohio Eighth District Court of Appeals had "impose[d] a sentence of an indefinite term of two to ten years" on count 11.  *State v. DeAmiches*, 77609, 2001 WL 210020 *11

-13-

(Ohio Ct. App. Mar. 1, 2001).  Three years later, on February 20, 2008, Judge Saffold amended the sentencing entry to state that "mandatory post-release control is part of this prison sentence."  *Id.*  The docket sheet suggests that plaintiff was never given notice of these entries and does not suggest that any re-sentencing hearing was conducted.

When plaintiff became aware of these entries in late 2009, he filed a *pro se* Motion to Vacate/Void Judgment, which Judge Saffold denied.  *See Docket Sheet for State v. DeAmiches*, Case No. CR-99-380999 (Cuy. Cty. Ct. Cmn. Pl.).   Plaintiff thereafter commenced a mandamus action in the state appellate court.  On May 26, 2010, the state appellate court agreed with plaintiff and issued an alternative writ of mandamus ordering Judge Saffold to "vacate the order of March 8, 2005, reimposing the term of seven to 15 years for Count 11, and the February 25, 2008 order, imposing postrelease controls, to reinstate the sentence as imposed by this court and ordered by the respondent in the December 13, 2004 journal entry and to notify immediately the [ODRC] of the changes in the sentence or to show cause why she should not follow the orders of this court." *See also State ex rel. DeAmiches v. Saffold*, 2010 WL 3441944 at * 1 (Ohio App. 8 Dist. Aug. 27, 2010).  The next day,  Judge Saffold issued a journal entry complying with the writ of mandamus.  There is no indication from the docket that Judge Saffold attempted to show cause why her March 2005 and February 2008 orders should not be vacated.  Plaintiff was released from prison on June 2, 2010, which he claims is five and a half months past his "rightful release date."  (Doc. 1 at 5).

While no excuse exists for Judge Saffold's failure to provide notice or a hearing prior to re-sentencing DeAmiches, or for her failure to timely comply with the state appellate court's opinion, she, nonetheless, had jurisdiction over DeAmiches' case.  Even though she acted inappropriately, the Court is compelled to find that she is immune from suit in this case. The Sixth Circuit has made

-14-

clear that, even where a judge acts corruptly or with malice,  judicial immunity exists unless the judge acted in "the complete absence of all jurisdiction." *Leech v. DeWeese*, 689 F.3d 538, 542 (6ᵗʰ Cir. 2012).  In light of the broad protection provided under this standard, the Court cannot say as a matter of law that Judge Saffold lacked all subject matter jurisdiction to enter the sentencing orders at issue.

Accordingly, the Court finds the Complaint fails to state a claim for relief against Judge Saffold in her individual capacity.

## IV.  Conclusion

Accordingly, and for all the reasons set forth above, this action is dismissed.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.


Dated: December 6, 2012                                    s/       James S. Gwin
                                                                        JAMES S. GWIN
                                                                        UNITED STATES DISTRICT JUDGE

---

[4]    28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

-15-